IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2022 Session

**TREVOR ADAMSON v. SARAH E. GROVE, ET AL.**

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2020-CV-906, 83CC1-2020-CV-616, 83CC1-2020-CV-818**
**Joe Thompson, Judge**

———————————————————

**No. M2020-01651-COA-R3-CV**

———————————————————

In this case, the plaintiff filed a complaint alleging defamation and related causes of action. Before the defendants filed an answer or any other pleading, the plaintiff filed a notice of voluntary dismissal, and the trial court entered an order of voluntary dismissal without prejudice. Within thirty days, the defendants filed a combined motion to alter or amend and petition to dismiss the complaint with prejudice pursuant to the Tennessee Public Participation Act (TPPA), Tenn. Code Ann. § 20-17-101, *et seq*., seeking an award of attorney fees and sanctions. The trial court ultimately entered an order altering or amending the order of voluntary dismissal without prejudice, granting the defendants' petition to dismiss with prejudice under the TPPA, and ordering the plaintiff to pay $15,000 in attorney fees in addition to $24,000 in sanctions. The plaintiff has appealed and raised numerous issues, including a challenge to the trial court's subject matter jurisdiction after the nonsuit. For the following reasons, we reverse the trial court's order granting the motion to alter or amend, vacate the trial court's order granting the appellees' petition to dismiss with prejudice and awarding attorney fees and sanctions, and remand.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Vacated in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Kent T. Jones, Cleveland, Tennessee, for the appellant, Trevor Adamson.

Daniel A. Horwitz, Nashville, Tennessee, for the appellees, Karl S. Bolton, Sarah E. Grove, and Deborah Ann Sangetti.

Jonathan T. Skrmetti, Attorney General and Reporter, Andrée Blumstein, Solicitor

General, and Janet M. Kleinfelter, Deputy Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On July 9, 2020, Plaintiff Trevor Adamson filed this lawsuit against Defendants Sarah E. Grove, Deborah Ann Sangetti, and Karl S. Bolton. According to the complaint, the suit arose out of allegedly defamatory Facebook posts and slanderous utterances made by Defendants concerning Plaintiff. The complaint asserted several causes of action, including defamation, invasion of privacy, intentional interference with business relations, and other related claims. It sought $800,000 in compensatory and punitive damages, in addition to injunctive relief and attorney fees. Plaintiff filed an amended complaint on August 12. On August 13, Plaintiff's counsel moved to withdraw. On August 20, Plaintiff filed a notice of voluntary dismissal without prejudice pursuant to Tennessee Rule of Civil Procedure 41.01. At that time, Defendants had not filed an answer or other pleading of any sort. On August 24, the trial court entered an order dismissing the case without prejudice pursuant to Rule 41.01.

On September 11, Defendants filed a combined motion to alter or amend and petition to dismiss with prejudice pursuant to the Tennessee Public Participation Act, Tenn. Code Ann. § 20-17-101, *et seq.*, seeking an award of attorney fees and sanctions. Defendants characterized Plaintiff's lawsuit as a "SLAPP-suit" that was filed by a political candidate in order to silence community activists who criticized him online. Thus, a brief description of SLAPP suits is helpful at the outset.

This Court provided the following general overview of SLAPP suits and anti-SLAPP legislation in *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 657-59 (Tenn. Ct. App. 2021):

> The term "SLAPP" stands for "strategic lawsuits against public participation," meaning lawsuits which might be viewed as "discouraging the exercise of constitutional rights, often intended to silence speech in opposition to monied interests rather than to vindicate a plaintiff's right." [Todd Hambidge, et al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 Tenn. B.J. 14, 15 (Sept. 2019)]; *see also Sandholm v. Kuecker*, 356 Ill.Dec. 733, 962 N.E.2d 418, 427 (Ill. 2012) ("'SLAPPs . . . are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so.'" (quoting *Wright Dev. Group, LLC v. Walsh*, 238 Ill.2d 620, 345 Ill.Dec. 546, 939 N.E.2d 389, 395 (2010))). Regarding SLAPP lawsuits generally, the

Illinois Supreme Court has aptly explained:

SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation. The paradigm SLAPP suit is "one filed by developers, unhappy with public protest over a proposed development, filed against leading critics in order to silence criticism of the proposed development." *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990). A SLAPP is "based upon nothing more than defendants' exercise of their right, under the first amendment, to petition the government for a redress of grievances." *Hogan*, 740 F. Supp. at 525. SLAPPs are, by definition, meritless. John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L. Rev. 395, 396 (1993). Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction. *Id.* at 403-05. "In fact, defendants win eighty to ninety percent of all SLAPP suits litigated on the merits." *Id*. at 406. While the case is being litigated in the courts, however, defendants are forced to expend funds on litigation costs and attorney fees and may be discouraged from continuing their protest activities. *Id*. at 404-06. "The idea is that the SLAPP plaintiff's goals are achieved through the ancillary effects of the lawsuit itself on the defendant, not through an adjudication on the merits. Therefore, the plaintiff's choice of what cause of action to plead matters little." Mark J. Sobczak, Comment, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U.L. Rev. 559, 561 (2008). SLAPPs "masquerade as ordinary lawsuits" and may include myriad causes of action, including defamation, interference with contractual rights or prospective economic advantage, and malicious prosecution. Kathryn W. Tate, *California's Anti–SLAPP Legislation: A Summary of and Commentary on Its Operation and Scope*, 33 Loy. L.A. L. Rev. 801, 804-05 (2000). Because winning is not a SLAPP plaintiff's primary motivation, the existing safeguards to prevent meritless claims from prevailing were seen as inadequate, prompting many states to enact anti-SLAPP legislation. *Id*. at 805. These statutory schemes commonly provide for expedited judicial review, summary dismissal, and recovery of attorney fees for the party who has been "SLAPPed." *Id*.

*Sandholm*, 356 Ill. Dec. 733, 962 N.E.2d at 427-28 (some internal citations omitted); *see also Steidley v. Cmty. Newspaper Holdings, Inc.*, 383 P.3d 780, 786 (Okla. Civ. App. 2016) (citations omitted) ("SLAPP suits are designed to intimidate the petitioners into dropping their initial petitions due to the expense and fear of extended litigation. Libel is a common cause of action in SLAPP suits.").

Anti-SLAPP statutes have arisen in response to SLAPP lawsuits. *See* Hambidge, *supra*, at 15 ("[A]nti-SLAPP statutes are not a recent development[;] [s]tates began enacting anti-SLAPP statutes in the 1980s in response to an increasing number of lawsuits that were filed for the purpose of discouraging the exercise of constitutional rights."); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2nd Cir. 2013) ("[T]he point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights."). Over thirty states now have anti-SLAPP statutes in place, and while the particular language varies, the stated purpose of anti-SLAPP legislation is consistent. *See, e.g.*, Ga. Code Ann. § 9-11-11.1(a) ("[I]t is in the public interest to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech . . . [T]he valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process."); Ark. Code Ann. § 16-63-501 ("[I]t is in the public interest to encourage participation by the citizens of the State of Arkansas in matters of public significance through the exercise of their constitutional rights of freedom of speech . . . Strategic lawsuits against political participation can effectively punish concerned citizens for exercising the constitutional right to speak and petition the government for a redress of grievances."); Colo. Rev. Stat. § 13-20-1101 ("[I]t is in the public interest to encourage continued participation in matters of public significance and [ ] this participation should not be chilled through abuse of the judicial process.").

*Id.* at 657-59.

Tennessee's Anti-SLAPP law, the Tennessee Public Participation Act, Tenn. Code Ann. § 20-17-101, *et seq.*, "is a relatively new creature of the legislature, having only been codified in 2019." *Doe v. Roe*, 638 S.W.3d 614, 617 (Tenn. Ct. App. 2021). However, this Court has noted that "the statute is, on its face, consistent with the anti-SLAPP legislation of many other states." *Nandigam*, 639 S.W.3d at 660. The TPPA provides:

The purpose of this chapter is to encourage and safeguard the constitutional

- 4 -

rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury. This chapter is consistent with and necessary to implement the rights protected by the Constitution of Tennessee, Article I, §§ 19 and 23, as well as by the First Amendment to the United States Constitution, and shall be construed broadly to effectuate its purposes and intent.

Tenn. Code Ann. § 20-17-102. The TPPA "is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 20-17-109.

Tennessee's Act contains a "burden-shifting mechanism." *Doe*, 638 S.W.3d at 624. "If a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action" by filing a petition "within sixty (60) calendar days from the date of service of the legal action or, in the court's discretion, at any later time that the court deems proper." Tenn. Code Ann. § 20-17-104(a)-(b). According to the Act,

(a)     The petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association.
(b)     If the petitioning party meets this burden, the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action.
(c)     Notwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action.
(d)     The court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties.
(e)     If the court dismisses a legal action pursuant to a petition filed under this chapter, the legal action or the challenged claim is dismissed with prejudice.
(f)     If the court determines the responding party established a likelihood of prevailing on a claim:
(1)     The fact that the court made that determination and the substance of the determination may not be admitted into evidence later in the case; and
(2)     The determination does not affect the burden or standard of proof in the proceeding.

Tenn. Code Ann. § 20-17-105.  The TPPA further provides:

> (a)      If the court dismisses a legal action pursuant to a petition filed under this chapter, the court shall award to the petitioning party:
> (1)      Court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition; and
> (2)      Any additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated.

Tenn. Code Ann. § 20-17-107(a).

Again, in the case before us, Defendants filed a combined motion to alter or amend the order of voluntary dismissal and petition for dismissal with prejudice pursuant to the TPPA.  They contended that Plaintiff had filed a frivolous SLAPP suit and that Plaintiff had nonsuited it after Defendants retained counsel.  Nevertheless, Defendants argued that they had "a vested statutory right to a dismissal <u>with</u> prejudice under the [TPPA]," such that the order of voluntary dismissal without prejudice should be altered or amended.  They argued that Plaintiff's claims were all "speech-based" and fell squarely within the coverage of the TPPA.  Accordingly, Defendants claimed a vested statutory right to the "substantive remedy" provided by the TPPA.  *See* Tenn. Code Ann. § 20-17-109.  Defendants argued that their motion to alter or amend was timely filed within thirty days and that their TPPA petition was also timely because it was filed within sixty days of the complaint in accordance with Tennessee Code Annotated section 20-17-104.  Thus, they argued that the trial court "retain[ed] jurisdiction" to alter or amend its order of voluntary dismissal and to adjudicate their TPPA petition.

Also within the combined petition, Defendants argued that Plaintiff was not entitled to a nonsuit under Tennessee Rule of Civil Procedure 41.01(1), for several reasons.  The Rule provides, in pertinent part:

> Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict. If a counterclaim has been pleaded by a defendant prior to the service upon

- 6 -

the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.

Tenn. R. Civ. P. 41.01. First, Defendants argued that Plaintiff's right to take a nonsuit was "[s]ubject to the provisions of . . . any statute," which, Defendants argued, would include their statutory rights under the TPPA. Next, Defendants cited caselaw recognizing that "[a] plaintiff's right to voluntary dismissal without prejudice is subject to the exceptions expressly stated in Rule 41.01(1) as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." *Lacy v. Cox*, 152 S.W.3d 480, 484 (Tenn. 2004) (citing *Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975)). Thus, Defendants claimed that they had a vested right to dismissal with prejudice under the TPPA and to recover their attorney fees and any additional relief the court deemed appropriate, including sanctions. They argued that these TPPA rights had "vested upon the filing of" Plaintiff's complaint against them and that it would undermine the purpose of the TPPA if a plaintiff could simply nonsuit his claims after a defendant incurred the expense of retaining counsel. Finally, Defendants argued that "the availability of statutory sanctions under the TPPA [] would also—by itself—confer jurisdiction to adjudicate the Defendants' sanctions claim following the Plaintiff's nonsuit," under the reasoning of *Menche v. White Eagle Property Group, LLC*, No. W2018-01336-COA-R3-CV, 2019 WL 4016127 (Tenn. Ct. App. Aug. 26, 2019). As such, they claimed that their substantive rights "must survive a plaintiff's non-suit."

Defendants' combined motion to alter or amend and TPPA petition went on to address the burden shifting mechanism set forth in the TPPA. Noting that the petitioning party first has "the burden of making a prima facie case" that the legal action was based on, related to, or in response to the exercise of the right to free speech, right to petition, or right of association, Tenn. Code Ann. § 20-17-105(a), Defendants argued that the claims in Plaintiff's complaint involved the exercise of their right of free speech and were made in connection with a matter of public concern within the meaning of the Act. So, Defendants argued that they were entitled to dismissal under subsection (b) "unless the responding party establishes a prima facie case for each essential element of the claim[s]." Tenn. Code Ann. § 20-17-105(b). Additionally, however, they noted that "[n]otwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). Defendants' petition analyzed several defenses, which, they claimed, barred the claims asserted in the complaint. In light of this showing, Defendants argued that they were entitled to dismissal of Plaintiff's complaint with prejudice in addition to an award of $15,000 for the attorney fees they had incurred and an award of sanctions, if the court deemed it appropriate. They argued that this case warranted "severe sanctions" and sought an award of $24,000, explaining that they calculated this sum as three percent of the amount of damages sought in the complaint ($800,000). Defendants attached various documents to their petition, including information regarding Plaintiff's political activity, online webpages and postings, Defendants' engagement letters and retainer agreements with their

attorney, and a fee petition analyzing the factors relevant to such awards.

Because Plaintiff's counsel had moved to withdraw, Plaintiff filed a pro se response to Defendants' combined petition. It was entitled, "Verified Petition of Trevor Adamson and Samantha Myers to Dismiss Tenn. R. Civ. P. 27.01(1)." The style of the case listed on the document included Plaintiff's fiancé as an additional petitioner and Defendants' counsel as an additional respondent. It sought various forms of relief, including injunctive relief, the opportunity to engage in discovery, dismissal of Defendants' motion for attorney fees, and an award of attorney fees to Plaintiff. The response suggested that, with limited discovery, Plaintiff would be able to show that the case was not about free speech. Plaintiff also argued that he had established a prima facie case of defamation. He attached many online posts and emails as exhibits, along with other documents. The clerk assigned a new docket number to this pro se filing, apparently because it purported to involve parties not named in the original complaint.

Defendants filed a reply, construing Plaintiff's pro se petition as a response to their combined motion to alter or amend and TPPA petition. However, they contended that Plaintiff's response was not supported by admissible evidence to meet his burden under the TPPA. Defendants argued that the response was meritless and failed to establish a prima facie case for each element of the claims or overcome the defenses asserted by Defendants. As a result, Defendants maintained that they were entitled to dismissal with prejudice under either subsection (b) or subsection (c) of Tennessee Code Annotated section 20-17-105.

At a hearing on October 5, 2020, Plaintiff indicated that he intended his pro se filing to serve as his response to the Defendants' combined motion to alter or amend and TPPA petition. Accordingly, the trial court entered an order stating that it would treat the filing as such a response. The order further provided that the two case numbers were consolidated. However, the order also stated that because Plaintiff had voluntarily dismissed his amended complaint, he could not add new parties or claims to it through his response. Therefore, the court struck any claims regarding the additional parties. The trial court allowed Plaintiff's counsel to withdraw and gave Plaintiff thirty days to file any further response to Defendants' combined motion and petition.

Plaintiff subsequently filed an additional pro se response, stating that he had been unable to retain an attorney. He maintained that his complaint did not relate to free speech and argued that Defendants were attempting to spread falsehoods about him and curb his own free speech rights. Plaintiff stated that he was attaching an article that "details the circular arguments and constitutional questions surrounding Anti-SLAPP legislation like the [TPPA]." He suggested that the TPPA effectively bars all defamation claims and "would limit the first amendment rights of Tennesseans" rather than protect them. He also attached online postings to his response. Defendants then filed an additional reply.

The trial court entered its final order on November 17, 2020. At the outset, the court stated that Defendants had filed a "timely" motion to alter or amend and TPPA petition. The trial court noted that Plaintiff had filed two responses to Defendants' petition, but the court found that neither response introduced admissible evidence that established a prima facie case for each essential element of the speech-based claims asserted in the complaint. It also found that neither response introduced admissible evidence sufficient to overcome the valid defenses that Defendants established. "Accordingly, for the reasons set forth in the Defendants' Motion and TPPA Petition," and the Defendants' two replies, all of which the court incorporated by reference, the court found that the combined motion to alter and amend and TPPA petition was well taken and should be granted. It dismissed Plaintiff's amended complaint with prejudice pursuant to Tennessee Code Annotated section 20-17-105(b) and (c), awarded Defendants $15,000 in attorney fees, and ordered Plaintiff to pay $24,000 in sanctions "to deter repetition of the conduct" by him or others similarly situated.

Much activity transpired in the two years that followed. Plaintiff retained counsel and filed a notice of appeal to this Court, but he designated only one docket number on his notice of appeal. This Court dismissed the appeal because he "listed only one of the case numbers from the consolidated cases in his notice of appeal" and "articulate[d] no issues stemming from the dismissal of the case number he designated." *Adamson v. Grove*, No. M2020-01651-COA-R3-CV, 2021 WL 5919118, at *1 (Tenn. Ct. App. Dec. 15, 2021). Accordingly, this Court concluded that it lacked jurisdiction to consider "the host of issues" Plaintiff raised on appeal. *Id.* at *4. Plaintiff then filed an application for permission to appeal to the Tennessee Supreme Court, raising numerous issues. The Tennessee Supreme Court, by order, granted Plaintiff's application, vacated the judgment of the Court of Appeals, and remanded to this Court for further review. The Supreme Court concluded that the trial court's consolidation order had made it clear that the court was treating Plaintiff's pro se filing as a responsive document rather than a separate complaint. Thus, under the particular facts of this case, the Supreme Court found that Plaintiff's notice of appeal was sufficient to provide Defendants with notice that Plaintiff was appealing the final order entered on the combined motion to alter or amend and TPPA petition. The Court explained that this "[gave] the Court of Appeals jurisdiction to hear the issues raised by [Plaintiff] arising from that single final order." The case was remanded "for further review consistent with this Order."

In the meantime, a supplemental record was filed in this Court reflecting that various documents had also been filed in the trial court after the notice of appeal was filed. In particular, Plaintiff had filed a motion to alter or amend or vacate the trial court's final order pursuant to Tennessee Rule of Civil Procedure 59 or 60. However, the motion was filed on February 12, 2021, three months after the final order of November 17, 2020. The motion stated that Plaintiff was approaching the trial court "[i]n an effort to provide judicial efficiency . . . rather than unnecessarily burdening the appellate Court," to provide the trial court with an opportunity to correct mistakes and/or due to excusable neglect. It also stated that Plaintiff was challenging the constitutionality of the TPPA on three grounds. The post-

judgment motion asserted that the trial court had "dismissed this case in error" in violation of Plaintiff's constitutional rights, and it asked the trial court to vacate its order of dismissal. Defendants filed a response in the trial court, asserting that Plaintiff's Rule 59 or 60 motion was untimely and meritless. Plaintiff filed an additional reply and affidavit. This Court noted in its first opinion that Plaintiff had filed the Rule 59 motion "well past the 30-day time period prescribed for such motions," but in any event, we stated that "[n]o ruling on the belated motion to alter or amend appears in the record on appeal." *Adamson*, 2021 WL 5919118, at *4 n.5.

Oral argument was held before this panel of the Court on May 17, 2022, after remand from the Tennessee Supreme Court. The day before oral argument, Defendants filed a motion to supplement the record on appeal with even more documents reflecting actions taken in the trial court in recent months. Defendants argued that recent orders were "relevant to several issues that [Plaintiff] has purported to raise in this appeal." Specifically, Defendants claimed that the trial court had entered two orders, on February 3 and May 16, 2022, which were "relevant in many respects to the issues that this Court has been tasked with adjudicating."

During oral argument the following day, Plaintiff's counsel argued that "the biggest issue" in this case is whether Plaintiff's nonsuit at the early stages of the litigation meant that the parties were "out of the case" such that it could not "[keep] going" thereafter. According to Plaintiff, the trial court did not have "jurisdiction after the nonsuit to continue the case." In response, Defendants' counsel argued that even though Plaintiff's counsel had just described this as "the biggest issue," he had not designated any issue in his *initial* brief on appeal regarding the trial court's "post-nonsuit subject matter jurisdiction" and had only raised the issue in his reply brief. Defendants argued that the issue of post-nonsuit jurisdiction was "actually litigated below and it was determined below," and that the trial court had "found post-nonsuit subject matter jurisdiction on two alternative bases." Defendants noted that those rulings were not challenged in the *initial* brief filed by Plaintiff and suggested that the issue should be waived when it was raised for the first time in a reply brief. Defendants' counsel further argued that the "post-judgment proceedings" that had occurred in the trial court after the filing of the notice of appeal impacted this Court's consideration of the matter and would result in those issues "fall[ing] away as a result." Thus, he asked this Court to grant his motion to supplement the record with the trial court's post-judgment orders.

After oral argument, Defendants filed a motion to consider post-judgment facts, again referencing the trial court's two recent orders. Defendants argued that the two orders "arose out of a contempt proceeding," and therefore, they were from an independent and "sui generis" action, separate from the case on appeal. Because Plaintiff did not file any notice of appeal following the entry of those orders, Defendants argued that the two orders "now carry preclusive effect." According to Defendants, one of those orders made an independent finding regarding the trial court's "post-nonsuit subject matter jurisdiction" to

- 10 -

alter or amend the order of voluntary dismissal and adjudicate the TPPA petition. As such, Defendants reasoned, the trial court's recent "independent" ruling on subject matter jurisdiction in the "contempt order" should have preclusive effect and bar this Court from considering the issue of post-nonsuit subject matter jurisdiction on appeal. According to Defendants, "this Court need not—and, indeed, it *cannot*—consider that jurisdictional question anew, even if this Court believes the ruling was wrong." This Court withheld its ruling on the motions filed in this Court pending the issuance of this opinion.

## II. ISSUES PRESENTED

The following issues were presented in Plaintiff's brief on appeal:

1.      Whether the *Tennessee Public Participation Act*, Tenn. Code Ann. §§ 20-17-101 *et seq*., unconstitutionally denies litigants the right to a jury trial?

2.      Whether the *Tennessee Public Participation Act*, Tenn. Code Ann. §§ 20-17-101 *et seq*., is in inextricable conflict with the *Tennessee Rules of Civil Procedure*?

3.      Whether Defendants/Appellees were simply exercising the right of free speech, the right to petition, or the right of association, or, instead exercising an intention and desire to destroy and undermine Plaintiff/Appellant's business? See generally Tenn. Code Ann. § 20-17-104.

4.      Whether Defendants/Appellees have made a prima facie case that Plaintiff/Appellant's legal action against them is based on, relates to, or is in response to those parties' exercise of the right to free speech, right to petition, or right of association? See generally Tenn. Code Ann. § 20-17-105.

5.      Whether Plaintiff/Appellant has made a *prima facie* case for each essential element of his claim in the legal action? See generally Tenn. Code Ann. § 20-17-105(b).

6.      Whether Plaintiff/Appellant has submitted admissible evidence in support of his claim? See generally Tenn. Code Ann. § 20-17-105(d).

7.      Whether Defendant/Appellee's *Motion to Alter or Amend Judgment* was frivolous? See generally Tenn. Code Ann. § 20-7-107(b).

8.      Whether Defendant/Appellee's *Tenn. Code Ann. § 20-17-104(a) Petition to Dismiss the Plaintiff's Complaint with Prejudice Pursuant to the Tennessee Public Participation Act* was frivolous? See generally Tenn. Code Ann. §20-7-107(b).

9.      Whether Defendants/Appellees were "presently unable to bring [their action] or cause it to be brought." See *Tennessee Rule of Civil Procedure* 27.01.

10.     Whether Plaintiff/Appellant's position was evaluated under the legal standards mandated for *pro se* litigants?

11.     Whether Defendants/Appellees' counsel's claim for Fifteen Thousand Dollars ($15,000) in Attorney's fees was backed up by legitimate, admissible

- 11 -

evidence, or instead, arbitrary and capricious?

12.      Whether the sanction of Twenty-Four Thousand Dollars ($24,000) was arbitrary, capricious and illegal?

In their posture as appellees, Defendants raised the following issues (omitting those resolved by the Tennessee Supreme Court regarding the separate docket numbers and the notice of appeal):

1.      Whether the Appellant's constitutional challenges to the Tennessee Public Participation Act—and several other claims—are waived because he has presented them for the first time on appeal.
2.      Whether the Appellant's failure to develop any argument in the body of his briefing regarding several issues the Appellant has raised on appeal results in waiver.
3.      Whether the Appellant's failure to contest the trial court's dispositive ruling that the Appellees established valid defenses to the Plaintiff's speech-based causes of action pretermits the Plaintiff's merits issues.
4.      Whether the Appellant failed to introduce admissible evidence establishing a prima facie case for each essential element of his speech-based tort claims.
5.      Whether several of the issues identified in the Appellant's Statement of the Issues are waived due to the Appellant's failure to present an argument regarding them in the body of his Brief.
6.      Whether the Appellant was treated improperly while acting pro se.
7.      Whether the trial court's attorney's fee award—which represented actual fees incurred—should be affirmed.
8.      Whether the trial court's sanctions award should be affirmed.
9.      Whether the Defendants are entitled to an award of attorney's fees regarding this appeal.

The State of Tennessee also filed a brief on appeal to defend the constitutionality of the TPPA.  It presents the following issues:

1.      Whether Plaintiff has waived its challenge to the constitutionality of the Tennessee Public Participation Act, Tenn. Code Ann. §§ 20-17-101 to -110, by not raising the issue in the trial court.
2.      If the challenge is not waived, whether the Tennessee Public Participation Act comports with the constitutional right to a jury trial and with the separation of powers.

In addition, this Court must address the jurisdictional issue raised in connection with the nonsuit and the outstanding motions filed in this Court regarding the preclusive effect of the trial court's recent orders.

## III.   DISCUSSION

### A.   *Outstanding Motions*

To begin, we will consider the motion to supplement the record on appeal and the motion to consider post-judgment facts, both of which pertain to the trial court's orders of February 3 and May 16, 2022.  Defendants contend that these orders arose from a separate contempt proceeding and that the trial court's ruling in the latter order regarding subject matter jurisdiction is entitled to res judicata effect on appeal.  Upon reviewing the attached orders, however, we disagree with this characterization.

The February 3 order found Plaintiff in contempt in relation to post-judgment discovery requests in aid of execution, and it provided that Defendants "shall be awarded" their attorney fees associated with the petition for contempt upon the filing of a fee affidavit.  However, the order "reserve[d] judgment on whether the Plaintiff shall be fined for his contempt until after the Plaintiff's outstanding Rule 59 motion is adjudicated."  As noted earlier in this opinion, Plaintiff had filed a post-judgment Rule 59 or 60 motion in February 2021, three months after the final order was entered and while this appeal was pending, but it went unresolved for months.  The second order that Defendants ask this Court to consider, entered on May 16, 2022, states, "This matter came before the Court for hearing on May 16, 2022, upon *Defendants' Motions: (1) To Deny Plaintiffs Long-Outstanding Post-Judgment Motions for Failure to Prosecute; and (2) For Attorney's Fees Regarding Defendants' Contempt Petition*."  Addressing the second matter first, the order stated that Defendants had withdrawn their claim for a fine arising from Plaintiff's contempt, so that claim was denied as moot, but the court awarded Defendants a certain sum for attorney fees incurred in the prosecution of the contempt petition.  Then, the order concluded with the following paragraph:

> The Court finds that the Plaintiff has failed to set any of his post-judgment motions for hearing for well over a year.  The Plaintiff's failure to set any of his post-judgment motions for hearing has also persisted: (a) after this Court advised the Plaintiff of his responsibility to set his motions for hearing when the Parties appeared before the Court on January 24, 2022; (b) in contravention of this Court's rules; and (c) over the Defendants' objections.  Accordingly, the Court having determined and reaffirmed its post-nonsuit subject matter jurisdiction pursuant to the statutory and vested rights exceptions to Tenn. R. Civ. P. 41.01(1), the Court finds that the Plaintiff's post-judgment motions—including the Plaintiff's Jan. 20, 2021 *Motion for Stay on Appeal* and Feb. 12, 2021 *Motion to Alter, Amend or Vacate Order* pursuant to Tenn. R. Civ. P. 59.04 and Tenn. R. Civ. P. 60.02—and all claims asserted within them should be and are hereby DENIED WITH PREJUDICE pursuant to Tenn. R. Civ. P. 41.02(1).

Clearly, then, the May 16, 2022 order addressed two separate matters – contempt and the outstanding "post-judgment motions" in the original case. Defendants rely on the trial court's statement in the quoted paragraph above about "post-nonsuit subject matter jurisdiction." However, a careful reading of this order reveals that this statement was made not in resolving the separate contempt proceeding but only as a basis for resolving the pending post-judgment motions in the same underlying lawsuit that is at issue in this appeal.

Again, the notice of appeal was filed in this case in 2020. As such, Plaintiff's post-judgment motion filed in February 2021 was untimely under Rule 59, and "[i]f a post-trial motion is not timely, the trial court lacks jurisdiction to rule on the motion." *Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009). The post-judgment motion also mentioned Rule 60; however, "a trial court has no jurisdiction to consider a Rule 60.02 motion during the pendency of an appeal." *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn. 1994). Once the notice of appeal is filed, the jurisdiction of the appellate court attaches, and, correlatively, the trial court loses jurisdiction. *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007). A party who wishes to seek relief from the judgment during the pendency of an appeal must apply to the appellate court for an order of remand. *Spence*, 883 S.W.2d at 596. "Absent an application for remand, the trial court's attempt to enter further orders addressing a party's Rule 60.02 motion is a nullity." *Born Again Church*, 266 S.W.3d at 425.

In sum, the so-called "jurisdictional ruling" on which Defendants rely was stated by the trial court in the context of its ruling on a post-judgment Rule 59 or 60 motion while this case was pending on appeal.[1] Therefore, the ruling is a nullity, and the order has no bearing on this appeal. We hereby deny the motion to supplement the record and the motion to consider post-judgment facts. *See Holleman v. Holleman*, No. E2018-00451-COA-R3-CV, 2019 WL 2308066, at *10 (Tenn. Ct. App. May 30, 2019) (denying a motion to supplement the record with a document related to a contempt proceeding when it had no bearing on the appeal); *see also* Tenn. R. App. P. 14(a) (stating that consideration of post-judgment facts "generally will extend only to those facts . . . affecting the positions of the parties or the subject matter of the action"); *Lovin v. State*, 286 S.W.3d 275, 283 (Tenn. 2009) ("[B]oth this Court and the Court of Appeals have declined to invoke Tenn. R. App. P. 14 with regard to [] facts that are irrelevant[.]").[2]

---

[1] To the extent that the trial court's ruling could be construed as also resolving other "post-judgment" matters raised in a January 2021 motion for a stay or the February 2021 motion to alter, amend, or vacate, we note that these "post-judgment" motions still did not arise from the contempt proceeding, which was not filed until almost a year later, in December 2021.

[2] Plaintiff had also filed a motion to dismiss Defendants' motion to consider post-judgment facts. We hereby deny this motion as moot.

### B. *Nonsuit*

We now consider both parties' arguments regarding Plaintiff's nonsuit. We begin by returning to the language of Rule 41.01(1):

> Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.

Tenn. R. Civ. P. 41.01. Although Plaintiff did not raise any issue regarding Rule 41.01 in his initial brief, Defendants described in detail the procedural history of the case pertaining to the nonsuit in their brief as appellees. Defendants noted that Plaintiff had taken a nonsuit, but Defendants explained that they had argued to the trial court that they could still exercise their rights under the TPPA "notwithstanding the Plaintiff's nonsuit" based on the "statutory exception" and the "vested rights" exception to Rule 41.01, in addition to public policy reasons. Thus, Defendants claimed in their brief that they had "timely exercised their vested statutory rights" under the TPPA, and "the issue of whether the trial court retained jurisdiction to adjudicate the Defendants' TPPA claims was fully litigated and determined by the trial court." Specifically, Defendants took the position that the trial court had agreed with and adopted their "jurisdictional" arguments that "the rights afforded to the Defendants by the TPPA could be exercised within the statute's 60-day period notwithstanding the Plaintiff's nonsuit," due to the "statutory exception" and "vested rights" exception to Rule 41. Defendants' brief further claimed that their "theory of jurisdiction . . . was not novel" and that it was supported by caselaw from other jurisdictions, which they cited. However, Defendants further argued that Plaintiff had not contested "the trial court's post-nonsuit jurisdiction" in his initial brief. They argued that the trial court's unappealed "jurisdictional" ruling was preclusive and entitled to res judicata effect on appeal.[3]

---

[3] This argument appeared to be tied to the issue regarding the separate notices of appeal, which has already been resolved. We note, however, that res judicata does not apply on appeal with respect to the trial court's ruling below regarding jurisdiction. *See Thomson v. Genesis Diamonds, LLC*, No. M2021-00634-COA-R3-CV, 2022 WL 3220872, at *4 (Tenn. Ct. App. Aug. 10, 2022).

- 15 -

In his reply brief, Plaintiff also addressed the issues surrounding the nonsuit. He argued that his ability to take a nonsuit should have been controlled by the last sentence of Rule 41.01 regarding counterclaims, which states, "If a counterclaim has been pleaded by a defendant *prior to* the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Tenn. R. Civ. P. 41.01(1) (emphasis added). According to Plaintiff, "[t]he [TPPA] *Petition to Dismiss* was the <u>counterclaim,</u>" so "under Rule 41.01, the seminal question was whether the counterclaim was pleaded" prior to service upon the defendant of the plaintiff's motion to voluntarily dismiss. Plaintiff noted that he gave notice of his nonsuit on August 20, 2020, and the order of voluntary dismissal was entered on August 24, 2020. Because there was no service of Defendants' TPPA petition prior to the dismissal, Plaintiff argued that Defendants' counterclaim under the TPPA was untimely and "the TPPA action is moot." He further argued during oral argument that the trial court had no jurisdiction to continue the case after the nonsuit.

Defendants filed their own reply brief, after the filing of Plaintiff's reply brief, in which Defendants maintained that Plaintiff's late-raised argument in his reply brief regarding Rule 41.01 "was expressly rejected below on two grounds and which the Plaintiff did not appeal or identify in his Statement of the Issues thereafter," and therefore, the issue was waived. Likewise, during oral argument, Defendants' counsel argued that Plaintiff had not designated any issue in his initial brief regarding the trial court's "post-nonsuit subject matter jurisdiction." He claimed that the issue of post-nonsuit jurisdiction was "actually litigated below and it was determined below" and that the trial court had "found post-nonsuit subject matter jurisdiction on two alternative bases." Defendants further explained their position on the issue in the context of their motion to consider post-judgment facts, in which they stated:

> During the initial Circuit Court proceedings that are the subject of this appeal, the Defendants asserted that the Circuit Court retained post-nonsuit subject matter jurisdiction to adjudicate their timely TPPA Petition based on two independent exceptions to Tennessee Rule of Procedure 41.01(1): the statutory exception and the vested rights exception. See R. at 123–130. At that time, the Plaintiff did not contest the Circuit Court's post-nonsuit subject jurisdiction. . . .

> By order dated November 17, 2020, the Circuit Court adopted the Defendants' position regarding post-nonsuit subject matter jurisdiction. Thus, the Circuit Court held that it retained post-nonsuit subject matter jurisdiction to adjudicate the Defendants' TPPA Petition given the Defendants' timely exercise of their vested statutory rights under the TPPA. See R. at 620, ¶ 1; R. at 621, ¶ 5 (incorporating by reference the arguments set forth in the Defendants' Motion and TPPA Petition).

As these arguments demonstrate, the parties rely on several different provisions of Rule 41.01.  We will address each one in turn.  This Court must address the parties' arguments regarding subject matter jurisdiction, even if late-raised, because "[a] challenge to subject matter jurisdiction cannot be waived and may be raised at any time." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 157 (Tenn. 2017) (citing *Johnson v. Hopkins*, 432 S.W.3d 840, 843-44 (Tenn. 2013); *In re Estate of Brown*, 402 S.W.3d 193, 199 (Tenn. 2013)).  "[S]ubject matter jurisdiction is a threshold inquiry, and it may be raised at any time in any court." *Recipient of Final Expunction Order in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 167 (Tenn. 2022).  In fact, "an appellate court *must* consider subject-matter jurisdiction, regardless of whether that issue was presented by the parties or addressed below." *State v. Bristol*, No. M2019-00531-SC-R11-CD, 2022 WL 5295777, at *5 (Tenn. Oct. 7, 2022).[4]

First, we note some general principles regarding a plaintiff's right to take a nonsuit. "Generally, '[t]he plaintiff . . . is the master of his or her complaint.'" *Stinson v. Vest Fam. Ltd. P'ship*, No. M2021-00151-COA-R3-CV, 2022 WL 534058, at *5 (Tenn. Ct. App. Feb. 23, 2022) (quoting *Chimneyhill Condo. Ass'n v. Chow*, No. W2020-00873-COA-R3-CV, 2021 WL 3047166, at *13 (Tenn. Ct. App. July 20, 2021)).  "For well over a century, plaintiffs in Tennessee have enjoyed the right to voluntarily dismiss an action without prejudice[.]" *Clark v. Werther*, No. M2014-00844-COA-R3-CV, 2016 WL 5416335, at *3 (Tenn. Ct. App. Sept. 27, 2016), *perm. app. denied* (Tenn. Jan. 19, 2017) (citing *Evans v. Perkey*, 647 S.W.2d 636, 640 (Tenn. Ct. App. 1982)); *see also Weedman v. Searcy*, 781 S.W.2d 855, 856-57 (Tenn. 1989) (explaining that "[t]he Tennessee rule on voluntary dismissals . . . is much more liberal than that obtaining in federal courts and in many other jurisdictions").  Tennessee Rule of Civil Procedure 41.01 "'embodies the policy of Tennessee jurisprudence that the right of the plaintiff to dismiss the action without prejudice is free and unrestricted except in limited and well-defined circumstances.'" *Hurley v. Pickens*, 536 S.W.3d 419, 422 (Tenn. Ct. App. 2016) (quoting *Robles v. Vanderbilt Univ. Med. Cntr.*, M2010-01771-COA-R3-CV, 2011 WL 1532069, at *2-3 (Tenn. Ct. App. April 19, 2011)); *see also Green v. Moore*, 101 S.W.3d 415, 419-20 (Tenn. 2003) ("[E]xcept in very limited circumstances, a party can take a voluntary nonsuit

---

[4] Also within their motion to consider post judgment facts, Defendants suggested that the Tennessee Supreme Court's order had "settled the question" of jurisdiction.  They quoted an excerpt from the order, which stated that the Court of Appeals had "jurisdiction to hear the issues raised by [Plaintiff]."  However, when read in context, it is clear that the Supreme Court was not analyzing the trial court's post-nonsuit subject matter jurisdiction.  The sentence at issue stated, "[T]he notice of appeal was sufficient to provide Defendants with notice that [Plaintiff] was appealing the final order entered on the combined motion to alter or amend the judgment and TPPA petition, and to give the Court of Appeals jurisdiction to hear the issues raised by [Plaintiff] arising from that single final order."  "The language of a decision must be read in the context of the issues and circumstances of the case." *JPMorgan Chase Bank v. Franklin Nat'l Bank*, No. M2005-02088-COA-R3-CV, 2007 WL 2316450, at *6 (Tenn. Ct. App. Aug. 13, 2007); *see, e.g. Memphis Bonding Co., Inc. v. Crim. Ct. of Tenn. 30th Dist.*, 490 S.W.3d 458, 467 (Tenn. Ct. App. 2015) ("[W]e should not assume that subject matter jurisdiction existed based on the fact that the issue was not addressed.")

- 17 -

without permission from the trial court."). Accordingly, "[i]n Tennessee, the plaintiff has a *right* to voluntarily dismiss his or her lawsuit under certain circumstances, which are outlined in Rule 41.01 of the Tennessee Rules of Civil Procedure[.]" *Ewan v. Hardison L. Firm*, 465 S.W.3d 124, 129 (Tenn. Ct. App. 2014) (emphasis added).

Rule 41.01 "permits liberal use of voluntary nonsuits at any time prior to 'final submission' to the trial court for decision in a bench trial or in a jury trial before the jury retires to deliberate." *Himmelfarb v. Allain*, 380 S.W.3d 35, 40 (Tenn. 2012) (quoting Tenn. R. Civ. P 41.01 adv. comm. cmt.). "Thus, the Rule contemplates that a voluntary dismissal may be taken late in the proceedings, when both parties have expended significant time and expense." *Douglas v. Lowe*, No. M2012-02276-COA-R3-CV, 2013 WL 6040347, at *7 (Tenn. Ct. App. Nov. 12, 2013). However, as previously noted, "[a] plaintiff's right to voluntary dismissal without prejudice is subject to the exceptions expressly stated in Rule 41.01(1) as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." *Lacy*, 152 S.W.3d at 484 (citing *Anderson*, 521 S.W.2d at 790). The exceptions expressly stated in the Rule apply to class actions, shareholder derivative actions, actions in which a receiver has been appointed, and actions in which an opposing party's motion for summary judgment is pending. *Id.* at 484 n.7. However, "[a]s long as none of these exceptions and limitations serve to restrict dismissal, Rule 41.01(1) affords a plaintiff the free and unrestricted right to voluntary dismissal without prejudice before the jury retires." *Id.*; *see, e.g.*, *Krajenta v. Westphal*, No. W2021-00832-COA-R3-CV, 2022 WL 4483412, at *2 (Tenn. Ct. App. Sept. 27, 2022) ("Under the plain language of Rule 41.01, unless an exception applied, it was error for the trial court to deny Appellants' voluntary nonsuits."); *Rose v. Bushon*, No. E2015-00644-COA-R3-CV, 2016 WL 7786449, at *4 (Tenn. Ct. App. Mar. 28, 2016) (reversing a trial court's order disqualifying plaintiff's counsel and awarding attorney fees to defendants after the plaintiff had taken a nonsuit, when it was undisputed that none of the exceptions of Rule 41.01 applied). We reiterate that "'in most situations a voluntary non-suit may be taken **as a matter of right**.'" *Ewan*, 465 S.W.3d at 130 (quoting *Clevenger v. Baptist Health Systems*, 974 S.W.2d 699, 700 (Tenn. Ct. App. 1997)).

Bearing these principles in mind, we turn to Plaintiff's focus on the last sentence of Rule 41.01, which states, "If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Plaintiff argues that Defendants' TPPA Petition should be treated as a counterclaim within the meaning of Rule 41.01, and because it was not pleaded prior to the nonsuit, Defendants could not file and proceed on their counterclaim after the nonsuit.

This Court's decision in *Sizemore v. Sizemore*, No. E2005-01166-COA-R3-CV, 2007 WL 2198358 (Tenn. Ct. App. July 30, 2007), is instructive on this issue. In that case, the wife had originally filed a divorce complaint in circuit court, and she later filed a notice of voluntary dismissal in that case and refiled in chancery court. *Id.* at *1. However, the

circuit court had not entered an order dismissing the original complaint. *Id.* After the parties proceeded to trial in the chancery court, the husband "filed a counterclaim in the Circuit Court proceeding--the one that had been dormant since Wife filed her notice of voluntary nonsuit some two years earlier." *Id.* The circuit court dismissed the counterclaim. *Id.* The husband appealed from both courts, and this Court affirmed both courts' rulings. *Id.* We explained that in the original circuit court action, "[t]he case was over as far as the claim of Wife was concerned," as she was the master of her suit and could dismiss it at her pleasure before trial. *Id.* at *7. As for the dismissal of the husband's counterclaim, we explained:

> Husband filed the counterclaim in question almost two years after Wife filed the notice of voluntary dismissal in the case. Under *Rickets* [*v. Sexton*, 533 S.W.2d 293 (Tenn. 1976)], that action was essentially over when Wife filed, and served Husband with, the notice of nonsuit. *See* 533 S.W.2d at 294. The only action left to be taken in the matter was the entering of an order that confirmed the nonsuit and dismissed the case. A court "has no jurisdiction over a counterclaim filed after the suit is voluntarily dismissed." *Salsman v. Texcor Indus., Inc.*, No. W2001-00730-COA-R9-CV, 2002 WL 1838135, at *4 (Tenn. Ct. App. W.S., filed July 29, 2002) (quoting 24 Am.Jur.2d *Dismissal* § 86 (1998)). The Circuit Court acted properly in dismissing Husband's counterclaim.

*Id.* (emphasis added).

Thus, a court "'has no jurisdiction over a counterclaim filed after the suit is voluntary dismissed.'" *Id.* (quoting *Salsman*, 2002 WL 1838135, at *4). The first question, then, is whether Defendants' TPPA Petition to dismiss seeking a mandatory award of attorney fees and discretionary sanctions would be considered a "counterclaim" within the meaning of Rule 41.

The Tennessee Supreme Court considered whether a defendant's pleading set forth a "counterclaim" within the meaning of Rule 41.01 in *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415-16 (Tenn. 1997). *Blake* was a worker's compensation case involving an employee and an employer. *Id.* at 414. The employee filed a complaint for benefits against her employer, and the employer filed a pleading consisting of an answer and "counter-complaint" that "[sought] a determination . . . of the rights, duties and obligations of the parties." *Id.* On the trial date, the employee moved for dismissal of her complaint without prejudice, which the court granted. *Id.* However, the case then proceeded on the employer's "counterclaim" for a determination of the workers' compensation benefits, if any, to which the employee was entitled. *Id.* On appeal, the employee argued that the trial court erred in hearing the case on the employer's "counterclaim" after her nonsuit. *Id.* at 415. She insisted that "proceeding further on the employer's prayer for a declaratory judgment was error." *Id.* Specifically, she argued that the "counterclaim" had "asserted

no grounds for relief other than the denial of liability" and that "dismissal of the complaint required the dismissal of the counterclaim." *Id.* Examining the provisions of Rule 41.01 as well as the workers' compensation law, the Tennessee Supreme Court disagreed. *Id.* First, the Supreme Court explained that the workers' compensation law authorized "the employee and also the employer to submit a workers' compensation controversy to the court for determination." *Id.* The Court concluded that, in that case, the employer had in fact asserted this right in the form of a "counterclaim." *Id.*

The Supreme Court explained that "Rule 41.01(1) states the circumstances under which a plaintiff may voluntarily dismiss a complaint without prejudice and the effect such a dismissal has on a counterclaim." *Id.* Examining the language of Rule 41.01(1), the Court noted that "a defendant may proceed on a counterclaim even though the plaintiff has taken a nonsuit," and therefore, "the question [was] whether the employer's pleading set forth a counterclaim *within the meaning of the rule*."[5] *Id.* at 416 (emphasis added). The Tennessee Supreme Court recognized that this precise issue had not been considered by an appellate court in Tennessee, but, it explained:

> Historically, in equity practice, the dismissal of an original bill ordinarily carried with it the dismissal of a cross bill or an answer filed as a cross bill, unless the answer or cross bill set up grounds for affirmative relief. Henry R. Gibson, *Suits in Chancery* § 726 (2nd ed. 1907); *McDowell v. Hunt Contracting Co.*, 133 Tenn. 437, 181 S.W. 680, 681 (1916). The general rule is that
>
> > [a]s used in a particular statute or rule precluding dismissal where the adverse party has sought affirmative relief, the term "affirmative relief" requires the allegation of new matter that, in effect, amounts to a counterattack. The relief sought, if granted, must operate not as a defense, but affirmatively and positively to defeat the plaintiff's cause of action. Thus, where the pleadings in a counterclaim constitute mere denials of the plaintiff's cause of action and state no facts on which affirmative relief could be granted, the plaintiff's right to voluntary termination of the suit is not affected.
>
> 24 Am.Jur.2d *Dismissal* § 66 (1983). This general rule is consistent with the language of Tenn. R. Civ. P. 13. Under Rule 13.01 a compulsory

---

[5] When considering the meaning of a "counterclaim" in the context of Tennessee Rule of Civil Procedure 13.09, this Court has noted that *Black's Law Dictionary* defines the term as "'[a] claim for relief asserted against an opposing party after an original claim has been made.'" *Chimneyhill Condo. Ass'n*, 2021 WL 3047166, at *12 (quoting *Black's Law Dictionary* at 433). In the case before us, however, we will look to the analysis set forth by the Tennessee Supreme Court regarding the meaning of a counterclaim within the specific context of Rule 41.01.

- 20 -

counterclaim is "any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the . . . occurrence that is the subject matter of the opposing party's claim . . . ."

*Id.* Applying these principles, the Court concluded that the employer's statutory right to file suit and submit the entire matter for determination by the court could be asserted as "a counterclaim under Rule 41.01." *Id.* The Court noted that the employer's allegations amounted to more than "mere denials of the plaintiff's cause of action." *Id.* They were sufficient to state a claim for relief and "sufficient to state a counterclaim under Rule 41.01." *Id.* As a result, "the counterclaim survived the dismissal of the employee's complaint." *Id.*

Applying these rules to the case before us, we conclude that Defendant's TPPA Petition to Dismiss and request for attorney fees and sanctions would be considered a counterclaim within the meaning of Rule 41.01. It amounted to more than "mere denials of the plaintiff's cause of action" and sought "affirmative relief" under the TPPA including attorney fees and sanctions. *See id.* The TPPA itself explains that the statutory scheme provides a "substantive remedy." *See* Tenn. Code Ann. § 20-17-109.[6] Pursuant to Rule 41.01, then, Defendants were entitled to proceed with their counterclaim if it was "pleaded . . . prior to the service upon the defendant of plaintiff's motion to dismiss[.]" A pleaded counterclaim will "survive a voluntary nonsuit as of right." *Menche*, 2019 WL 4016127, at \*7 n.7; *see, e.g.*, *Jolly v. Jolly*, No. W2001-00159-COA-R3-CV, 2002 WL 1592678, at \*3 (Tenn. Ct. App. July 19, 2002) *rev'd on other grounds* 130 S.W.3d 783 (Tenn. 2004) ("Husband's right to take a nonsuit is subject to Wife's right to proceed on her counterclaim."); *Harrison v. Nat'l Life & Accident Ins. Co.*, 145 S.W.2d 1023, 1025 (Tenn. Ct. App. 1940) (concluding that an insurer could proceed with a cross-demand for the

---

[6] We note that Texas courts have repeatedly held that motions to dismiss filed under its anti-SLAPP statute, the Texas Citizens Participation Act, are claims for affirmative relief for purposes of a nonsuit, such that pending "TCPA motions to dismiss survive nonsuit." *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468 (Tex. Ct. App. 2020); *see, e.g.*, *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 752 (Tex. Ct. App. 2019) (explaining that a nonsuit does not prejudice "the right of an adverse party to be heard on a pending claim for affirmative relief," and a TCPA motion "constitutes a claim for affirmative relief, which survives nonsuit"); *Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. Ct. App. 2017) ("Walker's motion to dismiss under the TCPA survived Hartman's nonsuiting of certain causes of action."); *Rauhauser v. McGibney*, 508 S.W.3d 377, 383 (Tex. Ct. App. 2014) ("[Appellant's] statutorily-based motion to dismiss—asserting that Appellees' claims were based on, related to, or were in response to his exercise of free speech and moving for dismissal with prejudice, sanctions, and attorney's fees authorized by the TCPA—constituted a claim for affirmative relief that survived Appellees' nonsuit[.]"); Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech L. Rev. 163, 179-80 (2020) ("It is well established that Texas law allows parties an absolute right to a nonsuit; however, if a TCPA motion has already been filed, the nonsuit does not affect the TCPA movant's right to attorney's fees and sanctions. This reasoning has been followed by courts in the TCPA context when a nonsuit is filed while the motion is pending.").

penalties provided in the bad-faith penalty statute, as "a plaintiff may at any time take a nonsuit or dismiss his action; but in all such cases there is a reservation to the defendant of his right to proceed with any set-off or counterclaim which he has presented at the trial").

This Court examined the timing for pleading a counterclaim within the meaning of Rule 41.01 in *Salsman*, 2002 WL 1838135, at *1. There, the defendants had filed a motion for leave to amend their answer to assert a counterclaim, but while that motion remained pending, the plaintiff filed a notice of voluntary dismissal. *Id.* The trial court initially entered the order of voluntary dismissal, but it later vacated that order and granted the defendants' motion to amend to assert the counterclaim. *Id.* On interlocutory appeal, the plaintiff argued that "the defendants had not *pleaded* a counterclaim prior to being served notice of the plaintiffs' voluntary dismissal," and therefore, "the counterclaim did not survive the voluntary dismissal." *Id.* at *2. We explained that "[m]ost courts in other jurisdictions considering this issue under the state rules of civil procedure have concluded that 'where the defendant's motion to add a counterclaim is pending when the plaintiff moves to voluntarily dismiss the action, the pendency of the motion for a counterclaim should defeat dismissal.'" *Id.* at *3 (quoting 24 Am.Jur.2d *Dismissal* § 86 (1998)). We also concluded that the same result was appropriate under Tennessee law. Thus, this Court held that "under Rule 41.01(1) of the Tennessee Rules of Civil Procedure[, . . . ] the proposed counterclaim attached to the motion to amend is considered a 'pleaded' counterclaim, thereby permitting the defendants to elect to proceed on the counterclaim despite the plaintiffs' notice of voluntary dismissal." *Id.* at *1.

Notably, for purposes of this appeal, the *Salsman* Court also considered arguments regarding the trial court's jurisdiction. The plaintiffs argued that the trial court "did not have jurisdiction to grant the defendants permission to amend their answer to assert a counterclaim once the trial court's order of dismissal became final." *Id.* at *4. We explained that the defendants had filed a motion to vacate the order of voluntary dismissal just days after it was entered, which, "was, in effect, a motion to modify or set aside the judgment before the judgment became final." *Id.* Pursuant to Rule 59, "the trial court had jurisdiction to modify its previously issued order of dismissal to permit the defendants to assert their counterclaim." *Id.* However, the plaintiffs further insisted that "the entire lawsuit, including the proposed counterclaim, was terminated automatically upon their filing of a notice of voluntary dismissal and, therefore, the trial court lacked jurisdiction to grant the defendants' motion to amend to assert the counterclaim." *Id.* We explained,

> While it is true that "[t]he court has no jurisdiction over a counterclaim filed after the suit is voluntarily dismissed," *see* 24 Am.Jur.2d *Dismissal* § 86 (1998),[7] in this case, the motion to amend to assert the counterclaim was filed

---

[7] According to 24 Am. Jur. 2d *Dismissal* § 86, which is entitled "Rights of parties to voluntary dismissal as affected by demand for affirmative relief by defendant—Where counterclaim not filed until after attempt to dismiss":

before the notice of the voluntary dismissal. As noted above, the defendants' motion to amend to assert a counterclaim is considered a *pleaded* counterclaim for purposes of Rule 41.01(1), where the motion to amend is later granted. Therefore, notwithstanding the plaintiffs' notice of voluntary dismissal, <u>the trial court retained jurisdiction</u> over the defendants' motion to amend. Therefore, the trial court did not err in vacating its order of dismissal and in granting the defendants' motion for leave to amend to assert their counterclaim.

*Id.* (emphasis added).

Considering the foregoing principles, we conclude that, unless some exception applied, Plaintiff maintained the right to take a nonsuit shortly after the complaint was filed when Defendants had not yet filed any type of pleading. In that case, the trial court would have no jurisdiction over Defendants' TPPA Petition when it was not filed until after the suit was voluntarily dismissed.

On appeal, Defendants have taken the position that the trial court found that it had "post-nonsuit subject matter jurisdiction" based on multiple "independent" grounds. From our review of the record, the trial court's order of dismissal stated that the Defendants filed a "timely" combined motion to alter or amend and TPPA petition, but it did not include any discussion of "post nonsuit subject matter jurisdiction." However, the trial court did state that Defendants' combined motion to alter or amend and TPPA Petition was granted "for the reasons set forth in the Defendants' Motion and TPPA Petition" and two subsequent replies. So, we will examine the analysis set forth in those documents to the extent that they were incorporated by reference in the order.

In Defendants' combined motion to alter or amend and TPPA Petition, they argued that the trial court "retain[ed] jurisdiction" to adjudicate the TPPA Petition and award them attorney fees and sanctions for what we perceive to be three reasons: (1) they had a statutory right to dismissal with prejudice under the TPPA; (2) they had a vested right to the substantive remedy provided by the TPPA; and (3) a motion for sanctions could be considered following a nonsuit pursuant to this Court's decision in *Menche v. White Eagle*

---

Where a defendant's counterclaim asking for affirmative relief is not filed until after the plaintiff has attempted to exercise his or her privilege of dismissal, the counterclaim does not defeat the plaintiff's motion, as a general rule. Thus, the counterclaim must be filed before the motion for dismissal. However, where the defendant's motion to add a counterclaim is pending when the plaintiff moves to voluntarily dismiss the action, the pendency of the motion for a counterclaim should defeat dismissal.

. . . .

The court has no jurisdiction over a counterclaim filed after the suit is voluntarily dismissed.

- 23 -

*Property Group, LLC*, No. W2018-01336-COA-R3-CV, 2019 WL 4016127, at \*12 (Tenn. Ct. App. Aug. 26, 2019).[8]

We first consider Defendants' argument regarding *Menche*. In that case, during the course of discovery, the trial court had granted motions to compel against the plaintiff and reserved the defendants' request for attorney fees. *Id.* at \*1. The defendants eventually moved for discovery sanctions and sought an award of their attorney fees related to prosecuting the motions to compel as well as the motion for sanctions. *Id.* Shortly thereafter, the plaintiff requested a voluntary nonsuit, but a motion for partial summary judgment was pending, so the plaintiff did not have a right to a nonsuit. *Id.* The defendants ultimately consented to the nonsuit, but the agreed order of voluntary dismissal was ambiguous as to whether the defendants reserved or waived their pending motions for sanctions. *Id.* at \*9. The agreed order appeared to dismiss only the claims asserted by the plaintiff. *Id.* The trial court decided that it retained subject matter jurisdiction over the pending motion for sanctions and awarded attorney fees. *Id.* at \*3. On appeal, the majority opinion ultimately agreed that "the trial court retained jurisdiction over the *pending* motion for sanctions," (emphasis added), and we affirmed "[t]he trial court's decision to consider the motion for sanctions notwithstanding the agreed order of voluntary dismissal of Appellant's lawsuit[.]" *Id.* at \*10. *Menche* is thus distinguishable because it involved a motion for sanctions that was "outstanding" when the plaintiff filed the motion for voluntary nonsuit, and the plaintiff had no right to take a nonsuit as a matter of right. *Id.* at \*8. In their combined motion to alter or amend and TPPA Petition filed in the trial court, which the trial court adopted, Defendants cited *Menche* for the notion that "the availability of statutory sanctions under the TPPA [] would []–by itself–confer jurisdiction to adjudicate the Defendants' sanctions claim following the Plaintiff's non-suit." However, *Menche* does not stand for the broad statement suggested by Defendants and adopted by the trial court. In *Menche*, this Court specifically noted that "the motion at issue in this case was filed by [defendants] prior to the dismissal of '[the plaintiff's] lawsuit.'" *Id.* at \*6 n.6. Thus, we concluded that "dismissal of [the plaintiff's] lawsuit does not, *ipso facto*, include dismissal of the pending claims for relief filed by [the defendants]." *Id.* There was no pending claim for relief in the case at bar.

Next, Defendants argued to the trial court that the "statutory rights" exception applied and that Plaintiff's right to take a nonsuit was "subject to" their "statutory rights under the [TPPA]." As support for this argument, Defendants relied on the express language of Rule 41.01(1), which states, "Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 *or of any statute*, and except when a motion for summary judgment made

---

[8] We reiterate that Plaintiff's initial brief did not raise any issue regarding the nonsuit, but Defendants' brief addressed Rule 41.01, and Plaintiff raised issues related to Rule 41.01 in his reply brief and during oral argument as a challenge to subject matter jurisdiction, which this Court was required to consider. Defendants have raised arguments regarding the various exceptions to Rule 41.01. We express no opinion as to whether all of these issues implicate subject matter jurisdiction but will address them to the extent they are raised by the parties in this context.

by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit . . . ." (emphasis added). According to Defendants, "Plaintiff's non-suit under Tennessee Rule of Civil Procedure 41.01(1) is 'subject to the provisions of . . . any statute," meaning, their "statutory rights under the TPPA remain[ed] fully cognizable" and the trial court "retain[ed] jurisdiction to adjudicate the Defendants' TPPA Petition." Defendants cited Tennessee Code Annotated section 20-17-109, which states that the TPPA confers a "substantive remedy." They also noted that the TPPA provided for dismissal *with* prejudice in the event that the court granted the petition, along with a mandatory award of attorney fees and the possibility of sanctions. Further, Defendants argued that it would defeat the purpose of the TPPA if a plaintiff "could wholly circumvent this carefully drafted framework by filing a baseless SLAPP-suit, forcing a defendant to hire an attorney and incur costs, and then non-suiting his claims after the defendant retains counsel." On appeal, Defendants contend that the trial court "adopted the Defendants' position regarding post-nonsuit subject matter jurisdiction" under "the statutory exception" to Rule 41.01.

This Court has considered and rejected similar arguments in relation to other statutory schemes. For instance, in *Hurley v. Pickens*, 536 S.W.3d 419, 420 (Tenn. Ct. App. 2016), defendants filed a motion to dismiss a plaintiff's health care liability suit for failure to comply with the statutory requirements regarding presuit notice and a certificate of good faith, and the plaintiff then filed a notice of voluntary dismissal without prejudice under Rule 41. The trial court entered an order of voluntary dismissal, and the defendants appealed. *Id.* at 421. On appeal, the defendants argued that the trial court erred by allowing the plaintiff to take a voluntary dismissal when their motion to dismiss pursuant to Tennessee Code Annotated section 29-26-122 was pending. *Id.* They pointed out that the action was "subject to dismissal with prejudice" for failure to comply with the statutory requirements. *Id.* (citing Tenn. Code Ann. § 29-26-122). In response, the plaintiff contended that he had "an absolute right to take a voluntary dismissal" under Rule 41. *Id.* This Court looked to prior caselaw that had already "addressed the issue of whether a plaintiff in a health care liability action may take a voluntary dismissal when a motion to dismiss is pending[.]" *Id.* at 422. This Court had declined to construe Tennessee Code Annotated section 29-26-122 "'as imposing an exception or limitation on the right of a plaintiff to voluntarily dismiss an action.'" *Id.* (quoting *Robles v. Vanderbilt Univ. Med. Cntr.*, M2010-01771-COA-R3-CV, 2011 WL 1532069, at *2-3 (Tenn. Ct. App. April 19, 2011)). We explained,

> Tenn. R. Civ. P. 41 grants a plaintiff an absolute right to voluntarily dismiss an action, without prejudice to its refiling; the right, however, is "[s]ubject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute . . . ." Tenn. R. Civ. P. 41.01. . . . Although the rule does not identify a particular statute to which it applies, consideration of Rules 23.05, 23.06 and 66 leads to the conclusion that exceptions to the right of a plaintiff to voluntarily dismiss an action without prejudice are limited, should result from a clear application of the rule or statute at issue, and should not be inconsistent with

- 25 -

> the fact that the right of voluntary dismissal without prejudice is "absolute."
> See 4 NANCY FRAAS MACLEAN, TENNESSEE PRACTICE, Author's
> Cmt. 41:2 at 99 (4th ed. 2006).

*Id.* (quoting *Robles*, 2011 WL 1532069, at *2-3). Under section 29-26-122, however, dismissal with prejudice "'is not automatic.'" *Id.* at 423 (quoting *Robles*, 2011 WL 1532069, at *2-3). As such, "'[n]othing in the statute operates to prevent a plaintiff from exercising the right to voluntarily dismiss the action without prejudice.'" *Id.* (quoting *Robles*, 2011 WL 1532069, at *2-3). The Court had also considered the argument that allowing the plaintiff to take a nonsuit would frustrate the intent of section 29-26-122 "'to discourage the filing of baseless medical malpractice lawsuits' and to 'impos[e] stiff penalties on both parties and attorneys who file suit without complying with the good faith certification requirements.'" *Id.* (quoting *Robles*, 2011 WL 1532069, at *2-3). We reiterated the plaintiff's absolute right to take a nonsuit and found nothing to indicate that "medical malpractice cases should not proceed in accordance with the rules applicable to all actions, including Tenn. R. Civ. P. 41." *Id.* (quoting *Robles*, 2011 WL 1532069, at *2-3).

In another opinion, issued within two days of *Hurley*, this Court rejected another argument based on the certificate of good faith requirement and the "any statute" language of Rule 41. *See Clark v. Werther*, No. M2014-00844-COA-R3-CV, 2016 WL 5416335 (Tenn. Ct. App. Sept. 27, 2016). There, the pro se plaintiff failed to attach a certificate of good faith entirely, and the defendants moved to dismiss due to the absence of the certificate. *Id.* The plaintiff then filed a notice of voluntary nonsuit. *Id.* The defendants argued that the plaintiff's "right to a voluntary dismissal without prejudice [was] precluded by a statute, specifically, Tennessee Code Annotated § 29-26-122[.]" *Id.* at *4. On appeal, we explained,

> While a plaintiff's right to a voluntary nonsuit is "[s]ubject to the provisions of Rule 23.05, 23.06, or Rule 66 or of any statute," we conclude the phrase "of any statute" does not include the certificate of good faith statute. We apply the well-known rules of statutory construction to the interpretation of procedural rules. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). If the language of the rule is capable of more than one meaning, we "must seek a reasonable construction in light of the purposes, objectives, and spirit of the [rule] based on good sound reasoning." *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). The reference to "any statute" is part of a list which includes Rules 23.05, 23.06, and 66. Each of the listed rules expressly limits a party's right to take a voluntary nonsuit in certain types of cases. When a general phrase follows a more specific list, we construe the general phrase to refer to only the same general class of items as those enumerated. *See State v. Marshall*, 319 S.W.3d 558, 561-62 (Tenn.

- 26 -

2010) (explaining that the canon of ejusdem generis operates to limit the breadth of a general phrase following a list of specific items). Thus, <u>"of any statute" must refer to statutes that specifically limit a party's right to obtain a voluntary nonsuit or otherwise relate specifically to the effect of a voluntary nonsuit.</u> This construction complies with the purpose of Rule 41.01, which was to preserve the historically liberal practice of allowing voluntary nonsuits in circuit court. *See Evans*, 647 S.W.2d at 640. Because the good faith certificate statute does not expressly preclude a plaintiff from taking a voluntary nonsuit and, by its terms, allows a court the discretion to excuse noncompliance under certain circumstances, the statute does not preclude Mr. Clark from taking a voluntary nonsuit.

*Id.* (emphasis added). The Court also included a footnote with examples of certain statutes that "specify the effect of a voluntary dismissal in certain types of cases." *Id.* at *4 n.7.[9]

Here, the TPPA generally provides that a TPPA petition to dismiss may be filed within sixty days from the date of service of a legal action, or in the court's discretion, "at any later time that the court deems proper." *See* Tenn. Code Ann. § 20-17-104(b). However, it does not "specifically limit a party's right to obtain a voluntary nonsuit or otherwise relate specifically to the effect of a voluntary nonsuit." *Clark*, 2016 WL 5416335, at *4. As such, it is not the type of "statute" contemplated by the exception stated in Rule 41.01.

Finally, we address the exception for vested rights. As we have noted earlier in this opinion, "[a] plaintiff's right to voluntary dismissal without prejudice is subject to the exceptions expressly stated in Rule 41.01(1) as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." *Lacy*, 152 S.W.3d at 484 (citing *Anderson*, 521 S.W.2d at 790). "Though not stated in the rule, the right of plaintiff to a nonsuit is subject to the further restriction that the granting of the nonsuit will not deprive the defendant of some right that became vested during the pendency of the case.'" *Id.* at 484 n.8 (quoting *Anderson*, 521 S.W.2d at 790). For instance, in *Anderson*, the Tennessee Supreme Court examined caselaw "dealing with the

---

[9] We also note that in *Stewart v. University of Tennessee*, 519 S.W.2d 591, 592-93 (Tenn. 1974), the Tennessee Supreme Court summarized the exceptions to Rule 41.01(1) as follows:

Rule 41.01(1) Tenn. R. Civ. P., provides for the free and unrestricted right of the plaintiff (at various stages of the proceedings) to take a voluntary nonsuit or to dismiss his action without prejudice except:
    a. in class actions
    b. in cases where receivers have been appointed
    c. *where precluded by a specific statute*
    d. in cases where a motion for summary judgment is pending[.]

(emphasis added).

- 27 -

question of what state of [a condemnation] proceeding the condemner can or cannot take a voluntary nonsuit." *Anderson*, 521 S.W.2d at 790. Specifically, the Court had recognized "three separate stages of a condemnation suit brought under T.C.A. s 23-1401 et seq., where it is too late for the condemner to take a nonsuit." *Id.* From these cases and Rule 41.01, the Court reasoned that "the condemner has the right to take a nonsuit at any time prior to the case being submitted to the trier of fact for decision, *unless* the condemner has taken possession of the property under court order issued under circumstances leaving nothing to be decided by the court except the compensation to be paid the owner for the land taken." *Id.* at 791 (emphasis added). Applying that rule to the facts before it, the Court held that "when the appellee obtained a court order for possession of the property being condemned, leaving nothing to be decided except the compensation to be paid appellants for the land taken, the appellee lost its right to take a nonsuit." *Id.*[10]

In contrast, the Supreme Court did *not* find any vested rights in *Rickets v. Sexton*, 533 S.W.2d 293, 294-95 (Tenn. 1976). The Court explained:

> The right of a plaintiff to take a nonsuit is subject to the further qualification that it must not operate to deprive the defendant of some right that vested during the pending of the case. *Anderson v. Smith*, 521 S.W.2d 787 (Tenn. 1975). No such right vested in the instant case.
> Defendants resisted the nonsuit upon the grounds that it would deprive them of unspecified 'substantive rights concerning their defenses which would not be available in a second suit'; that they would be prejudiced by delay; and that one of them was 'totally disabled and has been under extreme tension during the pendency of the suit.' The Chancellor evidently was influenced by the fact that one of the defendants was 69 years old and in poor health. This is regrettable but is not a basis for denying plaintiffs their clear right to a dismissal without prejudice.

*Id.*

In a more recent case, this Court observed that "it is hard to pin down the definition of a 'vested right.'" *State ex rel. Stanley v. Hooper*, No. M2000-00916-COA-R3-CV, 2001 WL 27378, at *2 (Tenn. Ct. App. Jan. 11, 2001). We noted that one court had defined it as a right "'which it is proper for the state to recognize and protect and of which [an] individual could not be deprived of arbitrarily without injustice.'" *Id.* (quoting *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978)). We added,

---

[10] Additionally, in *Panzer v. King*, 743 S.W.2d 612, 614 (Tenn. 1988), *abrogated by Lacy v. Cox*, 152 S.W.3d 480 (Tenn. 2004), the Tennessee Supreme Court held, within a very specific procedural context, that a defendant had, pursuant to prior caselaw, "a vested right of appellate review of the action of the trial judge in granting plaintiff a new trial," which could not be extinguished by the plaintiff's voluntary dismissal.

In a more general sense a vested right

> [m]ust be something more than a mere expectation based upon
> an anticipated continuance of the existing law; it must have
> become a title, legal or equitable, to the present or future
> enjoyment of property or to the present or future enjoyment of
> a demand, or a legal exemption from a demand made by
> another; and if before such rights become vested in particular
> individuals, the convenience of the state induces amendment
> or repeal of certain laws, these individuals have no cause to
> complain.

16B Am.Jur.2d *Constitutional Law* § 703.

*Id.* In *Stanley*, this Court acknowledged that the appellant had a "statutory right" to a jury trial in a paternity case, "[b]ut that statutory right was not a vested right that would survive the appellee's non-suit." *Id.* at *2. We have also recognized that showing that a nonsuit would "deprive the defendant of some vested right" is a "higher standard" than the rule that applies when a nonsuit is sought while a motion for summary judgment is pending, when the court considers whether the nonsuit would cause "plain legal prejudice to the defendant." *Ewan*, 465 S.W.3d at 136-37.

Thus, it is helpful to consider some additional examples of what has, and what has not, been deemed a vested right within the meaning of the implied exception to Rule 41.01. In *Ross v. Grandberry*, No. W2013-00671-COA-R3-CV, 2014 WL 2475580, at *1 (Tenn. Ct. App. May 30, 2014) *perm. app. denied* (Tenn. Oct.17, 2014), the plaintiff filed a health care liability action in general sessions court, and at a docket call, the defendant appeared and tendered a confession for the full $25,000 jurisdictional limit of the general sessions court. The plaintiff immediately sought to non-suit her claims. *Id.* The general sessions court denied the defendants' tendered confession and entered an order of nonsuit. *Id.* The plaintiff then refiled her suit in the circuit court, and the defendant moved for summary judgment based on its tendered confession of judgment in the general sessions court. *Id.* The defendant argued that its confession of judgment "cut off Plaintiff's right to non-suit[.]" *Id.* at *2. The circuit court granted the defendant summary judgment, "reasoning that [the defendant's] 'vested right' to confess judgment was 'paramount to any right for voluntary nonsuit.'" *Id.* On appeal, the plaintiff argued that "her nonsuit supersedes [the defendant's] confession of judgment because a nonsuit is a 'right' whereas, according to Plaintiff, a confession of judgment requires action by a judge--either to accept or reject the confession." *Id.* at *4. In response, the defendant argued that the judgment "self-executed upon confession--requiring no action by the trial judge--rendering Plaintiff's attempted nonsuit a nullity." *Id.* In other words, according to the defendant, "once it employed the confession of judgment mechanism to terminate the litigation, the case was finally submitted to the court, [the defendant] acquired a vested right in the confessed judgment,

and Plaintiff could no longer take a nonsuit." *Id.* This Court framed the "crucial question" as "whether a tendered confession of judgment by a defendant constitutes a 'final[ ] submi[ssion] to the court' to cut off a plaintiff's right to a voluntary dismissal without prejudice." *Id.* at *5. Examining the relevant statutes, we concluded that the tendered confession of judgment was not "self-executing" but required action by the trial judge. *Id.* "Because Plaintiff sought to voluntarily dismiss her case before the general sessions court entered judgment upon [the defendant's] confession, the circuit court erred in concluding that [the defendant] obtained a vested right to confess judgment which was paramount to Plaintiff's right to nonsuit her case." *Id.* at *6.

In *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976), this Court rejected an appellant's argument that dismissal of a party was improper "because it deprived him of his vested right to assert the Deadman's Statute." We recognized that "[t]he Anderson case stands for the proposition that a plaintiff's right to take a nonsuit against a defendant under Rule 41 of the Tennessee Rules of Civil Procedure is subject to the qualification that the granting of the nonsuit cannot deprive the defendant of a right which has vested during the pendency of the case." *Id.* However, we noted that the *Anderson* case involved vested property rights. We added, "[t]he availability of a legal defense is not a 'vested right' within the purview of Anderson." *Id.*

Tennessee appellate courts have declined to find vested rights in other cases as well. *See, e.g.*, *Peoples Bank v. Troutman*, No. E2014-01150-COA-R3-CV, 2015 WL 4511540, at *4 (Tenn. Ct. App. July 27, 2015) (rejecting the contention that the defendants "maintained a vested right to: (1) receive a grant of summary judgment due to the [plaintiff's] lack of expert testimony regarding the standard of care or (2) seek interlocutory or extraordinary appeal of the trial court's denial of their motion for summary judgment"); *Trull v. Ridgeway*, No. W2004-02026-COA-R3-CV, 2005 WL 1307855, at *2 (Tenn. Ct. App. May 27, 2005) (finding no vested rights where the appellants contended that the appellees should not have been allowed to take a nonsuit because it barred the appellants "from raising adverse possession as a defense to said claim").

On the other hand, this Court did find vested rights in *Shell v. Shell*, No. E2007-01209-COA-R3-CV, 2008 WL 2687529 (Tenn. Ct. App. July 9, 2008). In that divorce case, the parties had participated in mediation and resolved all issues in a signed mediated settlement, the mediator had already filed the final report with the court, and the husband had filed a motion to enforce the mediated agreement, when the plaintiff filed a notice of nonsuit. *Id.* at *1. The trial court initially entered an order of nonsuit but set it aside and approved the mediated settlement agreement. *Id.* On appeal, this Court recognized the "implied exception" from *Anderson*, which provides "that if the defendant is deprived of a right that became vested during the pendency of the litigation, a nonsuit was prohibited." *Id.* at *3. The husband argued that "his rights to the property awarded to him under the Mediation Agreement became vested" during the course of the lawsuit and that "the nonsuit would deprive him of his right to the property." *Id.* We noted that there was "no question

that a Mediated Agreement is enforceable as a contract under general principles of contract law." *Id.* at *3 n.3. We also noted that the wife had participated in mediation and that the trial court ultimately found the agreement to be valid and enforceable. *Id.* Thus, "[a]fter these in court proceedings, the plaintiff's attempt to take a voluntary nonsuit was too late after the defendant's Motion to Enforce the Mediation Agreement." *Id.*

We also discussed the vested rights exception in *Hollow v. Ingrim*, No. E2010-00683-COA-R3-CV, 2010 WL 4861430 (Tenn. Ct. App. Nov. 29, 2010). In that case, landowners agreed to the sale of property by a special master appointed by the court, the sale was held, and the master reported the purchase and asked that the sale be confirmed. *Id.* at *1. Before the court acted on the special master's report, however, the plaintiff moved for voluntary dismissal, which the trial court granted. *Id.* The question on appeal was "whether the granting of a nonsuit in this case deprived the intervenors of a vested right?" *Id.* at *4. We clarified at the outset that "[t]he intervenors did not, by virtue of being the high bidder at the judicial auction, acquire a vested right in the property itself." *Id.* Still, the high bidder was considered a quasi-party and had a right to "participate in the proceedings." *Id.* at *5. Thus, the relevant question was "[w]hether a party can voluntarily dismiss its lawsuit after the Special Master's report has been filed but not yet acted upon by the court," and that question was answered by Tennessee Rule of Civil Procedure 53.04. *Id.* Specifically, "the court must act upon the Master's report before any further action can be taken," as the rule mandated "that the trial court hold a hearing and exercise its independent judgment regarding whether the master's recommendations should be confirmed." *Id.* We reasoned that this hearing was mandatory and that the intervenors did "waive their right to a hearing." *Id.* at *6. Thus, we concluded that the trial court was required to hold a hearing on the special master's report and "must resolve the issue regarding whether the sale is to be confirmed pursuant to applicable law before any other action is taken by the Court." *Id.* The case was reversed and remanded because "the Trial Court was required to act on the Master's Report before entertaining any motion to dismiss the case." *Id.* at *1.

Comparing the facts of the case before us to those in the aforementioned cases, it becomes clear that the Plaintiff's nonsuit in this case did not "deprive the defendant of some right that became vested during the pendency of the case." *Lacy*, 152 S.W.3d at 484 n.8. Plaintiff took a nonsuit just six weeks after the initial complaint was filed, at a point when Defendants had not even responded to the complaint or filed any type of pleading in this case. Defendants argued in their combined motion to alter or amend and TPPA Petition that they had a vested right to dismissal with prejudice under the TPPA and its mandatory award of attorney fees, and they insisted that their statutory rights "vested upon the filing of the Plaintiff's Amended Complaint against them." However, at the point when Plaintiff took a voluntary nonsuit, Defendants had not petitioned the court to dismiss the complaint or submitted any evidence in an attempt to meet its burdens under the burden-shifting mechanism of the TPPA. Thus, Defendants did not, at that point, have a vested right to dismissal with prejudice or attorney fees or discretionary sanctions under the TPPA.

- 31 -

*Compare Ross*, 2014 WL 2475580, at *6 (holding that "the circuit court erred in concluding that [the defendant] obtained a vested right to confess judgment which was paramount to Plaintiff's right to nonsuit her case").

In summary, we reject Defendants' arguments regarding the applicability of the various exceptions to Rule 41.01 and conclude that the trial court lacked jurisdiction over Defendants' TPPA Petition that was filed after Plaintiff had already taken a voluntary nonsuit.[11] All other issues are pretermitted.

## IV.   CONCLUSION

For the aforementioned reasons, we reverse the trial court's order granting the motion to alter or amend, vacate the trial court's order granting the appellees' petition to dismiss with prejudice and awarding attorney fees and sanctions, and remand for entry of an order granting Plaintiff's request to dismiss this cause without prejudice. Costs of this appeal are taxed to the appellees, Sarah E. Grove, Karl S. Bolton, and Deborah Ann Sangetti, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[11] Although we have reached this conclusion by applying Tennessee law, we note that our decision is consistent with that of other courts. For instance, in *S. B. Beach Properties v. Berti*, 138 P.3d 713, 714 (Cal. 2006), the "plaintiffs voluntarily dismissed their entire action without prejudice *before* defendants attempted to file an anti-SLAPP motion." *Id.* The Supreme Court of California held that "Defendants who fail to file an anti-SLAPP motion before the voluntary dismissal of all causes of actions against them cannot recover fees or costs under [California's anti-SLAPP statute]." *Id.* at 715. The Court explained that "the filing of a viable anti-SLAPP motion [is] a prerequisite to recovering any fees and costs," and, "[a]s a matter of logic, a defendant must file a special motion to strike in order to prevail on one." *Id.* at 716. "Here," the Court added, "defendants failed to do so before plaintiffs' voluntary dismissal." *Id.* "Once plaintiffs dismissed their action," the Court continued, "no lawsuit existed for defendants to move against[.]" *Id.* Thus, the Court distinguished the many cases cited by the defendants in which "the plaintiff voluntarily dismissed the action *after* the defendant filed an anti-SLAPP motion," and fees were awarded "notwithstanding the voluntary dismissal." *Id.* at 717 (emphasis added). The Court also explained that its holding, "[a]llowing plaintiffs to voluntarily dismiss an action without penalty before the filing of an anti-SLAPP motion," would harmonize the purposes behind both voluntary dismissals and the anti-SLAPP statute. *Id.* at 717-18. This "bright line" rule, the Court reasoned, would have "the additional benefit of discouraging prolonged litigation solely over the matter of fees and costs." *Id.* at 718. *See also Stubbs v. Strickland*, 297 P.3d 326, 328 (Nev. 2013) ("In this appeal, we consider whether a defendant can file an anti-SLAPP [] suit after the plaintiff voluntarily dismisses the initial lawsuit. We conclude that if the plaintiff voluntarily dismisses the action before the defendant files either an initial responsive pleading or a special motion to dismiss pursuant to [Nevada's statute], the defendant cannot file an anti-SLAPP suit against the plaintiff based on that action.").